**William E. O'CONNOR, M.D.,**
**Appellant,**

v.

**SAM HOUSTON MEDICAL HOSPITAL, INC., d/b/a Sam Houston Memorial Hospital, and Spring Oaks Ltd., Appellees.**

**No. 01–89–01065–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 31, 1990.

Rehearing Denied Nov. 15, 1990.

Rodney J. Reynolds, Emmett Huuff, Houston, for appellant.

Ross Spence, Houston, for appellees.

Before WARREN, DUGGAN and HUGHES, JJ.

## OPINION

WARREN, Justice.

Appellees have filed a motion to dismiss this appeal because of appellant's failure to comply with postjudgment discovery orders entered by the trial court. Appellant has filed a response to which appellees have filed a reply.

The exhibits to appellees' motion and appellant's response establish the following facts.

On July 11, 1989, the trial court signed a final judgment awarding appellees monetary damages against appellant. Appellant did not file a supersedeas bond. Tex.R. Civ.P. 621; Tex.R.App.P. 47. Appellees served appellant with their postjudgment asset discovery request—deposition by written questions—on July 11, 1989. On December 14, 1989, the trial court entered an order compelling appellant to respond to appellee's discovery request by December 31, 1989. Although appellant claims he requested, and was granted, an extension until January 31, 1990, to comply with the trial court's December 14, 1989 order, the evidence attached to his response does not support this contention. (The exhibits to appellant's response indicate that appellant filed a motion requesting an extension until January 31, 1990, to respond to appellees' discovery request, but that the trial court did not rule on the motion.) On January 5, 1990, appellees filed a motion for sanctions and a finding of contempt due to appellant's failure to comply with the trial court's December 14, 1989 order. Exhibit B to appellant's response indicates that, on January 30, 1990, appellant filed his answers and objections to appellees' discovery request.

On February 2, 1990, the trial court signed an order finding appellant in contempt for his failure to comply with two previous orders compelling appellant to comply with appellees' discovery request. The trial court also found that appellant's answers and objections to appellees' discovery request were inadequate and made in bad faith. The trial court overruled appellant's objections to appellees' dis-

covery request. Appellant was also ordered to comply with the requested discovery by 5:00 p.m. on February 2, 1990, or pay appellees $1000 per day for each day he failed to comply. On February 2, 1990, appellant filed his supplemental responses to appellees' discovery request.

On March 20, 1990, appellees filed another motion to enforce the trial court's discovery orders claiming that appellant's supplemental answers to appellees' discovery request were still inadequate. Appellees' motion set out each answer they claimed was inadequate. Appellant filed a response to appellees' motion to enforce the trial court's discovery orders. In his response, appellant addressed each answer that appellees claimed were inadequate, and set out the reasons he claimed his supplemental answers were adequate.

For example, in question IV, appellees asked appellant to identify all financial institutions where he had held accounts since January 1, 1989, and, as to each account, appellant was asked to state, "the number and type of such account." Appellant did not furnish any account numbers in either his original or supplemental responses. Appellant's response to appellees' motion to enforce the trial court's discovery orders was:

> O'CONNOR provided a dollar amount after each account he maintained which is approximately if not the maximum amount of funds in each bank account at any time in the past year. Plaintiffs did not ask for the 'account number' in its question. Rather they asked for 'the number and type of such account.' In other words, they asked for how many NOW accounts did O'CONNOR have. They did not ask for the account number. O'CONNOR is not required to provide answers for questions which were not asked. Additionally, zip codes are public information.

In questions V and IX, appellees asked appellant questions concerning any ownership interest he had in any business entity with subparts requesting the address of the business, the type of business conducted, the serial numbers on stock certificates,

how the shares were acquired, how much appellant paid for them, how much they are worth now, the present location of the shares, whether they are pledged to any one else, or a description of the pledgee's interest. Appellant's supplemental responses to questions V and IX were almost identical to his original responses which the trial court had previously found were inadequate and made in bad faith. In his original response, appellant objected to question V on various grounds. In his supplemental response, appellant asserted the same objections to question V and also stated he owned no ownership interest in any business.

Appellant's original and supplemental responses to question IX were that he had an interest in "Truesdale Clinic, Inc.," in Massachusetts, and owned 10 shares of stock acquired in December 1988. Appellant's response to appellees' motion to enforce the trial court's discovery orders was:

> O'CONNOR while owning stock in Truesdale Clinic, Inc. does not have an ownership interest in that equity. Truesdale Clinic is more along the line of a medical association which requires its members to contribute a certain amount of funds in exchange for which they receive 10 shares of stock. This stock is not an ownership interest in any business entity.

In question XIII, appellees asked appellant to give the name and address of each of his creditors, the amount owed to each, or the amount paid to each creditor in the last four months. In both his original and supplemental answers to this question, appellant listed "various family and friends," "$28,000 in 1972 to 1979," "costs of medical school education," and "[appellant's attorneys] attorneys' fees incurred in 1989 and 1990." Appellant did not list, as creditors, any mortgage companies. Appellant's response to appellees' motion to enforce the trial court's discovery orders was:

> Plaintiffs' attorneys are well aware of the addresses of [appellant's attorneys]. In addition, O'CONNOR has substantially complied in answering the question and the plaintiffs are simply nit-picking

and harassing. Again the mortgage companies were listed, so no contempt is based there.

In question XX, appellees asked appellant whether he kept any "books or other written memoranda" of his income and business affairs. In both his original and supplemental answers to this question, appellant responded that he does not keep such books even though he admitted in other answers that he was employed and has two mortgages, two checking accounts, two savings accounts, three automobiles, and stock certificates. Appellant's response to appellees' motion to enforce the trial court's discovery orders was:

> Question XX does not ask if O'CONNOR kept any 'writings of any kind.' Rather, the question asks if he kept 'any books or other written memoranda' to which O'CONNOR replied no, he does not keep books or written memoranda. Plaintiffs now wish to change the question to read if you keep any writings. That may be what they want to know, but it was not the question which was asked of O'CONNOR. O'CONNOR is only required to answer the question which was asked. Once again, Plaintiffs are harassing O'CONNOR in an attempt to cover up their poorly drafted questions.

In question XXVI, appellees asked appellant how much income he reported to the IRS in each of the last three years. In both his original and supplemental answers, appellant claimed the requested information was privileged, and stated he was unable to state how much income he reported to the IRS because he filed a joint return with his wife. Appellant's response to appellees' motion to enforce the trial court's discovery orders was:

> O'CONNOR does not say he is unwilling to state how much income he reported to the IRS but rather he stated that he was not capable of answering the question. O'CONNOR is not refusing to answer the question. If the plaintiffs wish to know what income O'CONNOR and his wife reported to the Internal Revenue Service on their joint tax return, then they should have asked that question.

> They have asked a question which O'CONNOR has stated he is unable to answer. Unless the plaintiffs can show some proof that O'CONNOR is capable of answering this question, then Plaintiffs' charge should be dismissed.

The foregoing is typical of how appellant responded to appellees' discovery request in both his original and supplemental answers, and in his response to appellees' motion to enforce the trial court's orders.

On March 26, 1990, the trial court signed another order continuing its February 2, 1990 order in full force and effect, and ordering appellant to pay appellees $10,200 which represents $200 per day for each day of the 51 days until March 26, 1990, that appellant failed to comply with the February 2, 1990 order.

Appellant still has not supplemented his answers to appellees' discovery request. There is presently pending before the trial court "Plaintiffs' Third Motion For Sanctions And Finding of Contempt" that appellees filed on April 16, 1990.

■ Appellant argues this Court may not consider the exhibits attached to appellees' motion to dismiss because they are not part of the record on appeal. *See Perry v. Kroger Stores, Store No. 119*, 741 S.W.2d 533, 534 (Tex.App.—Dallas 1987, no writ); *Zodiac Corp. v. General Elec. Credit Corp.,* 566 S.W.2d 341, 347 (Tex.Civ.App. —Houston [14th Dist.] 1978, no writ). We disagree, because Tex.R.App.P. 19(d) and 60(a) apply. Under rule 19(d), motions, dependent on facts not apparent in the record, must be supported by affidavits or other satisfactory evidence. The affidavits and the other, competent, documentary evidence attached to appellees' motion to dismiss are properly before this Court. The *Perry* and *Zodiac Corp.* cases are distinguishable because they did not involve rule 19(d) and rule 60(a) motions.

■ Next, appellant apparently argues that this Court may not dismiss his appeal based on the trial court's contempt findings because the necessary procedural steps for holding appellant in contempt were not followed. We need not address whether the

necessary procedural steps for holding appellant in contempt were followed because the authorities cited by appellees support the proposition that this Court has the authority to dismiss an appeal where a party fails to comply with the trial court's collateral orders emanating from the proceeding even without a judicial finding of contempt. *Steed v. Woods*, 475 S.W.2d 814, 816 (Tex. Civ.App.—Amarillo 1972, writ dism'd); *see also Geesbreght v. Geesbreght*, 570 S.W.2d 427, 429 (Tex.Civ.App.—Fort Worth 1978, writ dism'd); *Hopp v. James*, 470 S.W.2d 716, 717 (Tex.Civ.App.—San Antonio 1971, no writ); Tex.R.App.P. 60(a)(1).

Rather, the questions to be decided here are: (1) whether the trial court abused its discretion in finding that appellant's initial answers to appellees' discovery request were inadequate and made in bad faith as set out in the trial court's February 2, 1990 order, and whether the trial court abused its discretion in continuing its February 2, 1990 order in effect, as set out in its March 26, 1990 order, after appellant filed his supplemental answers to appellees' discovery request; and (2) assuming the first question is answered in the affirmative, whether the extreme sanction of dismissal of appellant's appeal is appropriate.

■ The first question is governed by Tex.R.Civ.P. 215(2)(b) which authorizes a trial court to sanction a party who fails to comply with an order compelling discovery and with a proper discovery request. It was within the trial court's discretion to find that appellant's initial and supplemental responses to appellees' legitimate discovery request, some of which are set out above, demonstrated a rather cavalier attitude toward his discovery obligations, and that appellant's responses were incomplete and made in bad faith. *See, e.g., Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–43 (Tex.1985); *McRae v. Guinn Flying Services*, 778 S.W.2d 189, 191 (Tex.App.—Houston [1st Dist.] 1989, no writ).

We are persuaded that the trial court had entered two orders compelling appellant to respond to appellees' legitimate discovery request prior to entering its February 2, 1990 order, and prior to appellant filing any response at all to appellees' legitimate discovery request. We are also persuaded that appellant's supplemental answers to appellees' discovery request were virtually identical to his initial answers, despite the findings of bad faith in the trial court's February 2, 1990 order. Although appellant complains that appellees' discovery request was meant to harass him, we are persuaded that appellant filed no motion in the trial court to protect him from this "harassment," which he could have done under Tex.R.Civ.P. 215(3), until he filed his response to appellees' March 20, 1990 motion to enforce the trial court's discovery orders—almost one year after appellees initially requested the discovery. By this time, appellant had had several opportunities to claim that the requested discovery was meant to harass him, and the trial court had entered at least three orders compelling appellant to respond.

Another relevant consideration here is that appellant filed no supersedeas bond, which would ensure the collectibility of appellees' judgment, making the questions appellees asked him in their discovery request all the more legitimate. Tex.R.Civ.P. 621; Tex.R.App.P. 47. With respect to the substance of appellant's responses, the trial court acted within its discretion in finding that they were incomplete, evasive, and made in bad faith. For example, we do not see how appellant can seriously argue that a question which asks the names of financial institutions where he has bank accounts and "the number and type of such account," does not ask for the "account number," but rather asks, "how many NOW accounts did O'CONNOR have."

■ The next question is whether imposition of the extreme sanction of dismissal of appellant's appeal, which this Court has the power to do, is appropriate. *See Geesbreght*, 570 S.W.2d at 429; *Steed*, 475 S.W.2d at 816; *Hopp*, 470 S.W.2d at 717; Tex.R.App.P. 60(a). In light of appellant's failure to comply with the trial court's discovery orders, the trial court's findings that appellant's original and supplemental responses to appellees' discovery request

were made in bad faith, and the other evidence outlined above, such a sanction is appropriate in this case. *See McRae*, 778 S.W.2d at 191 (dismissal of a party's complaint with prejudice is justified where discovery abuse has persisted over a long period of time and numerous efforts have been made to obtain compliance; if the disobeying party has acted in bad faith, or has ignored the court's previous orders, courts may impose extreme sanctions).

The appeal is dismissed.

## ON MOTION FOR REHEARING

DUGGAN, Justice.

Appellant has filed a motion for rehearing of our opinion dismissing his appeal. He asserts two points of error. We deny appellant's motion for rehearing. Prior to addressing appellant's points of error, we first address several matters raised in the "factual background" section of appellant's motion for rehearing.

Appellant asserts that when appellees initially served their discovery request on him, he filed a motion to quash appellees' requested discovery. Appellant further asserts that on July 19, 1989, the trial court granted appellant's motion to quash by ruling that appellant was to serve his answers on the latter of the following dates: "(1) September 5, 1989, or (2) ten days after his failure to perfect an appeal or his appeal is denied." Appellant argues that since he perfected his appeal, and the appeal was not denied, no answers were due under the trial court's July 19, 1989 order.

Appellant mischaracterizes the trial court's July 19, 1989 ruling. The trial court's order states, "*Unless Defendant has prior filed a supersedeas bond which is sufficient under the law,* Defendant shall serve his responses to the Deposition Questions on the latter of the following two dates: (1) September 5, 1989 or (2) ten (10) days after his failure to perfect an appeal or his appeal is denied" (emphasis added). Since appellant did not file a supersedeas bond, then the trial court's July 19, 1989 order required him to respond to the discovery.

Appellant next asserts that when appellees filed their motion to compel discovery on November 2, 1989, appellant filed a response, and demanded an oral hearing by letter to the district clerk. Appellant's response asserted that he was under no obligation to respond to the discovery for the reasons set out above. On December 14, 1989, the trial court rejected appellant's contention, and, without an oral hearing, signed an order compelling appellant to respond to the discovery by December 31, 1989. Appellant has attached to his motion for rehearing an uncertified copy of the Local Rules of the Civil Trial Division, Harris County District Courts. *See McRae v. Guinn Flying Serv.*, 778 S.W.2d 189, 191 (Tex.App.—Houston [1st Dist.] 1989, no writ) (this Court may take judicial notice of a certified copy of the local rules). Appellant asserts the trial court violated the local rules when it granted appellees' motion to compel without an oral hearing.

■ Since appellant failed to attach a certified copy of the local rules, we may not judicially notice them. *Id.* Assuming we could judicially notice them, appellant's contention is without merit. The local rules required appellant to request an oral hearing on appellees' motion to compel in his response to appellees' motion to compel. Rule 3.3.4, Rules of the Civil Trial Division, Harris County District Courts. His request for an oral hearing was in a letter to the district clerk. Thus, appellant's request for an oral hearing did not comply with rule 3.3.4, and the trial court did not violate its local rules by failing to hold an oral hearing on appellees' motion to compel.

■ To the extent appellant argues his due process rights were violated by the trial court's failure to hold an oral hearing on appellees' motion to compel, this Court has held that compliance with local rules authorizing a trial court to rule on a motion upon submission without an oral hearing does not violate due process. *Palmer v. Cantrell*, 747 S.W.2d 39, 40–41 (Tex.App.—Houston [1st Dist.] 1988, no writ).

Appellant asserts two points of error in his motion for rehearing.

Appellant's first point of error asserts that this Court erred in finding no abuse of discretion by the trial court, and that the trial court abused its discretion by failing and refusing to state the specific nature of the deficiencies in appellant's responses and what additional information was required.

Appellant asserts the trial court abused its discretion when on February 2, 1990, it ordered appellant "to supplement his answers, without giving him any guidance whatsoever, then holding him in contempt and assessing sanctions against him for not being able to read the judge's mind as to just what he required." Appellant did not object to the alleged lack of specificity of appellees' questions or to the alleged lack of specificity of the trial court's orders compelling discovery until he filed his response to appellees' March 20, 1990, second motion to enforce the trial court's discovery orders—approximately nine months after appellees initially requested the discovery. Appellant waived any objections he may have had to the alleged lack of specificity of the questions, and to the alleged lack of specificity of the trial court's orders. TEX.R.CIV.P. 208(3); *see also* TEX.R.CIV.P. 168(6).

On this point, we quote from appellees' reply to appellant's motion for rehearing:

Appellant's arguments about the specificity of the trial court's orders are not timely and are without merit. The specificity arguments are not timely because they were not raised until after two orders compelling discovery and one order of sanctions and contempt had already been entered against Appellant. Appellant did not object to the discovery questions as being vague or lacking specificity when they were served on him (7/11/89), nor did he make such objections when Appellees moved to compel the discovery (11/3/89), nor when the trial court ordered him to respond to the discovery (12/14/89), nor when Appellees moved for sanctions and a finding of contempt (1/5/90), nor when Appellant moved for additional time in which to respond (1/16/90), nor when Appellant first responded to the discovery (1/30/90), nor at the hearing on Plaintiff's Motion for Sanctions and a Finding of Contempt which was postponed at Appellant's request and which Appellant nevertheless failed to attend (2/1/90), nor when Appellant amended his responses to the discovery (2/2/90), nor when the trial court sanctioned him and found him in contempt (2/2/90), nor when Appellees' counsel wrote Appellant's counsel requesting that he comply with the order and giving specific examples of his failure to comply (2/5/90).

It was only after Appellees moved for a second order of contempt that Appellant suddenly concocted the excuse that the questions asked are not specific enough for him to understand ...

The case of *Phillips v. Vinson Supply Co.*, 581 S.W.2d 789 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ), cited by appellant, is distinguishable. In *Phillips*, the court held that the trial court abused its discretion and denied plaintiff due process in dismissing plaintiff's case with prejudice where plaintiff's answers to interrogatories were filed within the time limits in the trial court's discovery order, and where plaintiff was without notice that the answers were defective, and was not allowed an opportunity to correct the defects in the answers. 581 S.W.2d at 792. Here, appellant was on notice that his answers were defective, and he had several opportunities to correct the defects in his answers.

Appellant's argument that the trial court abused its discretion in failing to guide him on how to respond to the discovery is without merit.

Appellant also argues that the trial court could not enforce its orders by contempt because of the lack of specificity of its orders. However, this Court dismissed appellant's appeal because of appellant's noncompliance with the trial court's discovery orders. In dismissing appellant's appeal, it was not necessary for this Court to decide whether the trial court could enforce its orders by contempt. It was only necessary for this Court to decide whether appellant complied with the trial court's discovery

orders, and whether such noncompliance was willful and in bad faith. *McRae*, 778 S.W.2d at 191.

Therefore, the cases appellant cites are inapplicable. *See Ex parte Lee*, 704 S.W.2d 15 (Tex.1986); *Ex parte Reese*, 701 S.W.2d 840 (Tex.1986). In *Reese* and *Lee*, the trial courts sought to enforce their orders by civil contempt, and ordered the offending parties confined. At issue in *Reese* and *Lee* was the validity of the confinement. No such issue is presented here because the trial court never sought to enforce its discovery orders by civil contempt. To the extent appellant argues that the trial court abused its discretion in finding that his answers to the requested discovery were incomplete and made in bad faith because of the lack of specificity of the discovery questions and the trial court's prior orders compelling appellant to respond to the discovery, appellant waived this objection for the reasons set out above.

In summary, appellant has failed to demonstrate that the trial court abused its discretion in finding that appellant's initial answers to appellees' discovery request were inadequate and made in bad faith as set out in the trial court's February 2, 1990 order, and that the trial court abused its discretion in continuing its February 2, 1990 order in effect, as set out in its March 26, 1990 order, after appellant filed his supplemental responses to appellees' discovery request.

Appellant's first point of error is overruled.

Appellant's second point of error asserts that this Court erred in imposing the extreme sanction of dismissal of his appeal because, prior to the dismissal of his appeal, appellees had obtained from appellant the information they earlier requested at appellant's deposition in Massachusetts, where appellant now resides. In their reply to appellant's motion for rehearing, appellees assert, with supporting documentation, that appellant has been as evasive in responding to discovery in Massachusetts as he has been in Texas.

It is unnecessary for this Court to decide whether appellees obtained from appellant at his Massachusetts deposition all the information they previously requested, because eventual compliance with a discovery request does not preclude the imposition of sanctions. *Drozd Corp. v. Capitol Glass & Mirror Co.*, 741 S.W.2d 221, 223 (Tex. App.—Austin 1987, no writ).

Appellant's second point of error is overruled.

The motion for rehearing is denied.

WARREN, J., having died on August 13, 1990, not participating.